Good morning. May it please the Court. My name is David Schlesinger. I represent the appellant Margarito Vargas. The District Court, in denying Mr. Vargas's motion under Rule 11d2b of the Federal Rules of Criminal Procedure, made a key error, and that is it did not assess whether Mr. Vargas subjectively believed that the 25-year supposed cap in the plea agreement that he executed was both a cap, as he understood it, and a floor, as attorneys and judges, of course, know that Rule 11c1c plea agreements would require. There are several factors in the record, some ironically objective and some subjective, that weigh in Mr. Vargas's favor. The key piece of evidence that I would refer to, and it appears in multiple places in the record, is the letter from Mr. Vargas's then counsel, Larry Bachman, to him on March, dated March 20th of 2012. It appears in different parts of the excerpts of record. The version I'm looking at appears in ER, begins at ER 1027. In that letter, Mr. Bachman used highly emotive language to convince Mr. Vargas, who was offered a package deal at that point with two of his brothers, Alvaro Vargas, who faced a combined 50-year mandatory minimum term if he were to be convicted on — I'm talking about the March 20th, 2012 letter, Your Honor. You are correct that there is a March 16, 2012 letter. I'm trying to find the right one. And that references the government's second plea offer to Mr. Vargas. And that second plea offer was a range deal of 20 to 30 years. In the March 20th, 2012 letter, Mr. Bachman mentions that the government had then offered Mr. Vargas two options, either the 20 to 30-year range deal or a 25-year deal. Now, Mr. Bachman himself testified on cross-examination during the evidentiary hearing that there is nothing in this letter from which anyone, particularly a layperson like Mr. Vargas, would be able to infer that the 25 years was both a ceiling and a floor. And referencing the highly emotive language that Mr. Bachman used in this letter, he said it would be, quote, a no-brainer, end quote, for Mr. Vargas to accept this plea agreement given that Alvaro Vargas, Mr. Vargas's brother, was facing a combined 50-year mandatory minimum term if convicted on the conspiracy to distribute counts, Section 846, and two Section 924C counts. Mr. Bachman in this letter, I'm looking here at page 1028, also said, in addition to it being a no-brainer, that Mr. Vargas would be making, quote, a tragic mistake, end quote, if he were to turn this down. And he also, in that same paragraph, this is the second paragraph in this paragraph on page E or 1028. It's not. I mean, the problem is, is this what you pay lawyers for, to give you their best judgment and state it in whatever terms they think? I mean, are lawyers not supposed to try to persuade their clients to do what they think is best for them? I think Your Honor is correct that there is a very fine line between giving advice, as I think Mr. Bachman may have attempted to do, and pushing the client through I mean, that's coercion. I mean, he could have said no. In fact, he did say no for rather a long time. Eventually Eventually, he came up to the lawyer and said he changed his mind. Yeah. On the day of trial, April 17th, 2012, Your Honor, he and his two brothers and Mr. Marquez approached their respective counsel and asked if the 20 to 30 year arrangement was still operative. I mean, are you claiming that the package deal itself was coercive, regardless of the lawyer? I'm not claiming that it's intrinsically coercive. I'm claiming under the circumstances of this case, Your Honor. That the package deal was coercive, not that the lawyer, I mean, that's a different question from whether the lawyer, knowing of the package deal, should have pushed the defendant to take it into account. I think that both the package deal as structured, and perhaps more importantly, the circumstances of this case, including the March 20th letter, but also various other circumstances, including the history of Mr. Bachman's and Mr. Vargas' relationship, including Mr. Vargas' But the package deal had nothing to do with their relationship. I mean, that was the government's position. And if there isn't, I mean, if there's nothing wrong with it, then it isn't attributable to Bachman. No, I would agree in general with that, Your Honor. But I think when you look at the entire history of the relationship, it creates a subjective context in which Mr. Vargas just inherently did not trust Mr. Bachman. He, on three occasions But he withdrew his motion to have him withdraw his counsel, right? He withdrew the first one, Your Honor, which I believe he made in March of 2012. But then there was a second one made, which was heard on the day of trial, April 17th, 2012, and the district judge, district court actually denied the motion. And then he made a third, I believe it was sometime in May of 2012, which the district judge also denied. So how can a district judge possibly rely on a defendant's representations that he knows what he's doing? He signed a plea agreement that explicitly says that the agreed-upon sentence is 25 years of imprisonment, 15 years of supervised release. He has a colloquy with the judge in which he signed that. And then he has a colloquy with the judge where the judge asks if he's read it. And he says, line by line, word for word, I've read it. And he asks him if he understands it. He says he does. He asks if he has any questions. He says he does. He says he's satisfied with the representation that he's received. And not only all of that, the testimony is clear that the assistant U.S. attorney right before this colloquy started personally explained again what the terms of the binding plea are. And so all of this happens, and the judge accepts it. And then you come back and say, well, you just, it was coercive. You really didn't understand it. I'm really at a loss as a district judge how I would, if that's not enough, then what's enough? A couple of points, Your Honor. First, as this Court has held in cases such as United foreclosed a defendant's right under Rule 11. And I should note that I would like to reserve some time for rebuttal, but let me try to finish with these two points. Under Rule 11d2b, a defendant is not foreclosed from later moving to withdraw the guilty plea, even if the Rule 11 colloquy were completely adequate. Second, you had referenced Mr. Newman, the AUSA's remarks regarding what, quote-unquote, an appropriate disposition would be. That phrase itself, which also appears in the plea agreement, is ambiguous regarding whether the 25-year term would be both a cap. It's not ambiguous. It's not ambiguous in the plea agreement. And that was my question. Because you spend a lot of time arguing about the language cap in the letter, and that's ambiguous, and I tend to agree with you. But by the time you get to the plea agreement, it's the plea agreement itself is quite clear that he's agreeing to a term of 25 years. And then he, again, during the plea colloquy, it's quite clear that he knows that it's 25 years is what he's agreeing to. Given the phrase, appropriate disposition, Your Honor, I would respectfully disagree that his subjective understanding of the term would be that it would be both a 25-year cap and a floor as well, so that he would not and his counsel would not be able to argue under Section 3553A that there would be reasons for him to receive a sentence shorter than 25 years. If there aren't any further questions at this time, I'd like to reserve my remaining time for rebuttal. Thank you. Good morning again. Justin Rhodes on behalf of the United States. I'd like to start where Mr. Schlesinger ended, which is this question about whether the plea agreement was vague. And he said Mr. Newman used the phrase, appropriate disposition. Well, Mr. Newman did use that phrase when he was reading the penalty section of the plea agreement into the record. But he actually walked into the well, and he pointed at each defendant and said, this plea agreement means you get 25 years, you get 25 years, you get 15, and you get 15. In the words of Albaro Vargas's lawyer, Mr. Newman was blindingly clear as to how much time. Which then just brings us back to the beginning, which is what did Margarito Vargas think? And I acknowledge that the AIA case does say that the court, in addition to looking at the totality of the circumstances, should look at defendant's subjective belief. And Judge Feist did that. And that's why I would disagree with Mr. Schlesinger. Because what were the three things that he said in his declaration that suggest that this plea was not voluntary or was coerced? One, that I was not properly advised of the terms of the agreement, which is at ER 879. Two, I did not understand the terms of my agreement, essentially. It's, again, same page. And then also, I was coerced into accepting my plea agreement. Judge Feist's well-reasoned and extensive order takes each of those statements and finds them to be demonstrably false. So what Judge Feist is not saying is that Margarito Vargas could not have believed that based on the evidence in the record. He's saying Margarito Vargas did not believe that, that his statement that I thought X is false. And by finding that statement false, he means that Mr. Vargas did not believe that, which is an exact analysis of Mr. Vargas's subjective state of mind as to all I have a real concern about the package nature of this plea. First of all, it's not your ordinary package deal because it's, it's bloodlines are involved. It's two brothers are involved. Doesn't that create even more of an inherently, inherent risk of coercion? I think that the Ninth Circuit law is that package deals should be examined with additional scrutiny. Right. And I read the plea colloquy and was it Judge Feist? That's correct, Your Honor. It seemed to me like that the government was trying to get the judge to make the more plea deal, but Judge Feist didn't seem to want to have much to do with that. And in our case in Karo, we said that package deals aren't, aren't per se impermissible, but you do, let's see, what did they say? The failure to investigate whether co-defendants pressured Karo into signing onto the agreement could well have affected his decision to enter the plea. I know that the defendants' counsel during this argument hasn't focused all that much on that, but I have to say that was one of the biggest areas of concern for me. I mean, shouldn't he, shouldn't in the plea colloquy the judge have honed in on that and asked specifically whether the brothers who were getting their sentences cut to 15 were putting pressure on Vargas to enter the agree, the agreement for 25? Your Honor, I think it's a very fair question. If I can break it into some parts. The first part is, is simply procedurally that the defendant has not challenged the package nature. It comes up really in his reply. So what's before this Court is, although coercion is certainly before this Court, the nature of the plea agreement is not. Well, the coercion, I would disagree with you because that's what the dangers of a package deal, plea deal is, is coercion. So once you're arguing it was coerced, I mean, I think any reason why it might be coerced is fair game. Fair. And, well, I think that what I was going to next turn to, which is I think raised in Karo, is that when you have a family relationship, there's a concern that family will lean on family. Did he at the district court, this is why I asked the question before, there's kind of a mushing of whether he's complaining. He's not exactly making an effective assistance claim. He's arguing He's specifically not. That his lawyer is, his lawyer coerced him. Did he ever argue in the district court or here that his brother or his brother's lawyer coerced him? He specifically has waived any right to claim that his family coerced him. I brought it up in my brief because it was unclear. In his reply, in one of the footnotes, he said, we are not making the argument that the coercion came from any family member. It's merely from Mr. Backman and the lawyers for the other Okay. Let's say it's that. But Backman himself in the letter does say it would be tragic if you didn't enter this plea agreement because of what would happen to your brother. I acknowledge that. But I think Judge Smith sort of hit the nail on the head is that as an attorney, what are you supposed to tell your client? Because if he hadn't advised Margarito Vargas the consequences both to Mr. Vargas and to Mr. Albarro Vargas, I think we might be before this Court on a voluntariness issue that I didn't understand that this plea had consequences as to me and to my brother. The language that Mr. Backman used was urging, and I think it's strong urging, but I think the cases that we've cited all say that a lawyer does not cross the line by strong urging. And there's cases where, you know, their defendants are called idiots, and I won't repeat the foul language that are directed towards them, but, you know, it is a lawyer's duty to effectively advocate for his client, and sometimes that encourages Shouldn't the district judge have made a greater inquiry concerning this deal and whether pressures were placed on the Well, he asked the following questions. One, did anyone threaten you? So that comes right out of the standard plea colloquy. It's not doing anything different than you otherwise wouldn't do. It's right in the bench book for district court judges. True, but I don't know. I have trouble conceiving the question that would be, have you been pressured by anyone else in this case, including your family? I would think that, because the plea agreement, I mean, to give the government its due, the plea agreement starts out saying this is a package deal, which should probably have been some, you know, red light or something for the district court judge to say, oh, I've heightened scrutiny. I've got to make some more specific questions here. But I think if you look at the cases like Costello, there's no magic language that a district court needs to use. There isn't, but there is. I'm sorry. Go on. Did the district court in his chamber's order even mention the package deal and the brother issue and so on? But I don't think, because I think he had satisfied himself, and at no point did Mr. Well, he wrote a very long opinion, but not very long, but relatively long, but it doesn't even consider this problem. Well, because I don't think the problem was raised. Mr. Vargas has a chance in his declaration to say, I was pressured by the following people, and the brother and the friend and the other brother are never mentioned. Or even the other lawyers for the other people. True. I'm talking about, though, what Caro's, the burden that Caro puts on the district judge at the time of the plea colloquy and suggesting that the judge didn't satisfy  And I think that that's a real issue, and I think that's a real issue, and I think that's a real issue and it's something that we need to discuss, and I think there is no question that he was a heroic hero in this case. And I want you to show me where he did, other than the general question that you ask every defendant at every plea colloquy. Well, the pleas were done seriatim, so it would be, question as to this defendant, yes or no, question as to this defendant. But then at the end when they were talking about the actual pleas, they were done separately. The government asked the court to specifically, to inquire of the defendant specifically, that there, that it was as to Albaro Vargas, that he is not entering into this agreement because of any threats or coercion by the other defendants or their counsel, given the nature of the deal, and that's ER 117. And so Judge Fee said, have you been coerced? The government then didn't say the next time it came up, can you again please ask because of the nature of the deal, but Judge Fee again asked the coercion question. And the coercion question is broad enough. And Mr. Vargas, frankly, stopped the proceedings at one point and asked about whether a prior State conviction was going to come in and, you know, he clearly wasn't afraid to stop the proceedings and say, I don't understand, and interrupt. So it wasn't that he got browbeaten and, you know, plowed into the ground on this. I think you keep missing my point. My point is that, I don't know, it seems to me that after Caro, the onus is on the it's almost like an additional thing you need to put on your checklist of things you're going to do at the plea colloquy if there's a package deal. Thank you. Could I just, I mean, I think that I'm having a hard time envisioning what would happen in that colloquy because I think the context here is important. The context, as I understand, I just want to make sure I'm correct about this, is that up until this point, the plea offers had not been package deals. They had been individual deals. And this became a package deal because the jury was selected and was, I think it was fully selected or it was in process. Is that right? Actually, no, Your Honor. This, the moment the initial offers were sent out in March, it was a package deal as to all four defendants with a range of, with respect to this defendant, 20 to 30 years. And then they asked for a finite time, and so the package was again reoffered at 25 years. This was always a package. It has always been a package deal. And Roman Vargas, one of the defendants, had said that if the other defendants didn't plead the day of trial, he was going to plead open and go on his own. So they had been aware of the package deal throughout, and at no point had, there's no way that the jury had complained about it or wanted to individually negotiate. Am I right that the jury was, was selected at the point that this was done? The jury had not been selected. The jury was in the, the jury, the room to be sent over the entire veneer. Vargas was selected. We're about to start the selection. Okay. All right. Thank you. Let me briefly follow up the line of questions that Judge Warla had raised regarding the nature of the Rule 11 inquiry. It's our view that regardless of whether the colloquy violated the plain terms of Rule 11, it was part of the totality of circumstances that led Mr. Vargas to believe that the 25 years was a, was it merely a ceiling and not a floor as well. And, and as Judge Warla has correctly pointed out. But that's an entirely different question from the package deal aspect of this, right? I think. And that's really your focus. The package deal issue really hasn't been your focus. Well, I think we have, we have two interrelated arguments, Your Honor. The first is that the package deal. They're not really very related because the package deal argument, I gather, would suggest that it's some, in some way, and I'm not sure what it is, whatever the arrangement was, he was, even if he knew that it was 25 years flat out, he only entered it because he was, quote, coerced. But the question by either his brother or his relatives or his, you know, or his, the lawyers for the other defendants. And the question is what, I mean, once you allow the package deals at all, what does the coercion mean? I mean, I find the package deals very disquieting, especially when you're dealing with relatives. But, but I don't understand what Carol means when it says you're supposed to have heightened inquiry into whether there was coercion. I mean, does it mean if your mother comes and says, oh, please plead guilty because otherwise your brother's going to get 50 years, that's coercion? I suppose, Your Honor, it would mean that there would have to be a heightened inquiry into the various discussions that went into it. Well, the judge here did say, did anyone coerce you, including any of the other defendants in this case, to get you to sign this document? No. Now, what else? And should he have said, did your parents or any of your other siblings ask you to enter into this for your brother's sake? We acknowledge, Your Honor, that there isn't anything in the record to support that any of Mr. Vargas' siblings are involved. Well, I know, but in terms of what it means to have heightened scrutiny of the package What is it that a judge should ask? That's what Judge Berzon is asking you. What should the judge be asking? I would like to know, too. Well, I know that Judge Worla mentioned that what the judge here did was merely straight out of the ---- No, I understand that. Just tell me, what should the judge ask? I think it should be more specific, more focused questions regarding whether the discussions that went into his ---- Like what? It should be, well, what did your attorney tell you? Were you asked if you should condition this plea on the pleas of your other brothers? Well, of course they should, because it was a package deal, so that can't be the problem. If the lawyer says, I mean, could it be if he then said, yes, my lawyer told me that if I didn't plead guilty, my brother was going to get 50 years, that's a true statement, so that can't be it. Or does the judge right then say, well, I'm not going to take your plea? Is that your point? I think that the judge here, Judge Feist, very easily, following a more specific inquiry, could have decided not to take the plea if he thought that the circumstances were unduly coercive. But is that what you think he should have done? If he said, are you pleading guilty because if you don't, your brother goes to trial and he's going to get 50 years, he says, well, yeah, that's part of it, then should the judge then say, okay, no deal, I'm not taking the plea? In the Tenth Circuit, the role is that the judge has to make an inquiry into the prosecutor's good faith. So the Tenth Circuit actually has an express role about what you're supposed to do. I can't comment specifically on that, Your Honor. It isn't that specific. You're right. It doesn't say exactly what the judge should do. I just know, based on how you've described Carroll, Your Honor, that there should have been more. And it's part of the overall totality of the circumstances that led Mr. Vargas to think that 25 years is merely a cap and not a floor as well. I see. But now you're full. Okay. Okay. Thank you. Thank you very much, counsel. Thank you. Thank you.
judges: Smith, Wardlaw, Berzon